UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SACHIN GUPTA, | ) |
|               Plaintiff, | ) ) ) |
|               v. | )    No. 1:18-cv-00427-JRS-DLP |
| CHAD MELLOH, et al., | ) ) ) |
|               Defendants. | ) |

**Order on Defendants' Motion for Summary Judgment**

Plaintiff Sachin Gupta—drunk and handcuffed—lost his balance, fell forward, and broke his neck when Officer Chad Melloh tugged him toward the hotel exit. Mr. Gupta alleges federal civil rights claims for excessive force and unreasonable prosecution against Officer Melloh and a state-law claim for battery against both Officer Melloh and the City of Indianapolis.[1] Defendants move for summary judgment.

**Background**

Mr. Gupta, a software salesman, accompanied a customer to the Indianapolis Motor Speedway in the early afternoon of May 22, 2017. (Gupta Dep. 30:15–31:4, ECF No. 49-7.) Once there, he began to drink. (*Id.* at 33:7–15.) He went to dinner with the customer and continued to drink. (*Id.* at 34:4–24.) After dinner and a stop at his hotel, Gupta went alone to Casablanca—evidently a bar near the hotel—and drank some more. (*Id.* at 37:5–7, 38:11–39:12.) The last thing he remembers was smoking a cigarette at Casablanca. (*Id.* at 39:16–25, 45:10–16.)

---

[1] Gupta also alleged a state-law claim for negligence against Melloh and the City of Indianapolis but withdraws that claim in response to Defendants' motion for summary judgment.

Around midnight, of all the hotels in all the towns in all the world, Gupta walked into the Microtel Inn & Suites on Rockville Road. (Eweda Aff. ¶ 8, ECF No. 49-4.) Unfortunately, Gupta was not staying at the Microtel Inn & Suites; he was staying at the Holiday Inn Express down the street. (Pl.'s Resp. to Def.'s 1st Interrog. ¶ 6, ECF No. 49-24; Eweda Aff. ¶ 8, ECF No. 49-4.)

Gupta staggered into the Microtel's vestibule and tried to enter the lobby. The Microtel had locked its lobby doors at 11:00 p.m., and Gupta, of course, did not have a Microtel keycard. (Morcos Aff. ¶ 6, ECF No. 49-3;.Eweda Aff. ¶ 8, ECF No. 49-4.) Gupta swiped a card across the reader several times, but the lobby doors did not open. He stumbled back and forth between the reception window and the lobby doors and eventually engaged the night manager in conversation through the reception window.

Gupta grew animated and shouted obscenities at the night manager—variations on the theme "open this f***ing door." (Eweda Aff. ¶¶ 9–10, ECF No. 49-4.) Gupta lay his right hand on a brochure rack and threw it down, scattering ads for local attractions across the floor.[2] (Defs.' Ex. 18.4; Eweda Aff. ¶ 11, ECF No. 49-4.) The night manager called the police. (Eweda Aff. ¶¶ 12–13.)

Officer Shawn Cook arrived at 12:34 a.m. (Defs.' Ex. 18.4 at 2:34.) Outside the hotel, Cook noticed flower pots overturned and pizza smashed on the glass of the side

---

[2] Gupta contends that he "held a brochure rack to steady himself" and the rack "fell over" when he "stumbled backwards." Though the Court, on summary judgment, draws all reasonable inferences in favor of Gupta, as the nonmovant, the video evidence reviewed by the Court plainly contradicts his version. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

2

door. (Cook Aff. ¶ 6, ECF No. 49-2 at 1.) Once inside the vestibule, Cook saw the brochures scattered across the floor and Gupta, intoxicated and angry. (Cook Dep. 7:14–23, 9:2–14, 13:22–24.) Cook ordered Melloh to put his hands behind his back. Gupta instead put his hand in the air, and Cook grabbed it and cuffed his hands behind his back without incident. (Defs.' Ex. 18.4 at 3:12–27; Cook Aff. ¶ 11.) Gupta was "unsteady on his feet" and "swaying." (Cook Dep. 13:14-19, ECF No. 49-9.)

Officer Melloh arrived two minutes later and spoke with Officer Cook. (Defs.' Ex. 18.4 at 5:15.) Cook asked Melloh to watch Gupta and then left the vestibule. Melloh went to the door, opened it, and beckoned repeatedly for Gupta to follow. (Defs.' Ex. 18.4 at 7:48–8:11.) Gupta did not come to the door, so Melloh approached Gupta. (*Id.* at 8:12–18.) Melloh testifies that he tried twice to lead Gupta toward the door, and, when Gupta would not budge, he tugged Gupta more forcefully. (Melloh Dep. 13:22–14:17, ECF No. 49-8.)

Gupta and Melloh fell into the wall, then Gupta careened headlong to the floor. (Defs.' Ex. 18.4 at 8:18–20.) Melloh immediately grabbed Gupta and turned him on his side, then lifted Gupta by the arm and dragged him outside. (*Id.* at 8:21–48.) Once outside, Melloh sat Gupta upright and noticed Gupta bleeding from the nose and mouth. (*Id.* at 8:51.) One of the officers called for an ambulance, which arrived and transported Gupta to Eskenazi Hospital. Gupta was diagnosed with a fractured C-5 vertebra.

Gupta was charged by information with resisting law enforcement and public intoxication based on Officer Cook's probable cause affidavit. (Pl.'s Ex. 14, ECF No. 59-

3

10.) Gupta entered a diversion agreement and the charges were dismissed. (Pl.'s Ex. 16, 17, ECF Nos. 59-12, 59-13.)

## Legal Standard

"A district court properly grants summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). In considering a motion for summary judgment, the district court "must construe all the facts and reasonable inferences in the light most favorable to the nonmoving party." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017). However, the district court must also view the evidence "through the prism of the substantive evidentiary burden," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986), and does not draw "inferences that are supported by only speculation or conjecture," *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).

## Discussion

The Fourth Amendment guarantees the "right of the people to be secure in their persons . . . against unreasonable . . . seizures[.]" U.S. Const. am. IV. "The dispositive question is whether, in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an 'objectively reasonable' manner." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). But even if the officer's conduct was not objectively reasonable, he is entitled to qualified immunity so long as his conduct does not violate a clearly established right.

4

Courts may address qualified immunity before determining whether a constitutional deprivation took place. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Addressing qualified immunity first is especially appropriate where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.* at 237.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to

5

determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).

Gupta contends that "[a] handcuffed[,] non-resisting defendant's right to be free from excessive force was clearly established at the time of the incident." (Pl.'s Resp. at 25.) His proposed formulation not only defines the law at a high level of generality, but also begs the question whether the force used in this case was excessive. Gupta's core contention appears to be that Melloh's use of force was unreasonable because he attempted to remove Gupta from the vestibule with just one hand and without waiting for Cook's assistance.

The decisions Gupta identifies would not provide reasonable notice that forcefully tugging a drunk, handcuffed, noncompliant arrestee would violate clearly established law. In *Baldwin v. Placer Cty.*, 418 F.3d 966, 969 (9th Cir. 2005), the defendant-officers put guns to the plaintiffs' heads and kneed the plaintiffs in the back. In *Ikerd v. Blair*, 101 F.3d 430, 432 (5th Cir. 1996), the defendant-deputy violently jerked a ten-year-old girl—believed to be a sex-crime victim—out of a chair by her surgically-repaired arm and dragged her into another room. The defendant-deputy—a self-described "big old boy" weighing "close to 300 pounds"—testified that there was no need whatsoever to touch the girl. *Id.* at 433. In *Bauer v. Norris*, 713 F.2d 408, 412 (8th Cir. 1983), the defendant-deputies seized the plaintiffs outside their home without any reason. The defendant-deputies each grabbed one of Mrs. Bauer's arms and pulled in opposite directions and handcuffed both plaintiffs tightly. *Id.* at 410–11. In *Hadley v. Guitierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008), the defendant-officer

6

punched the plaintiff in the stomach while the plaintiff was handcuffed and neither struggling nor resisting. In *Frazell v. Flanigan*, 877, 884 (7th Cir. 1996), one defendant-officer struck the plaintiff twice in the back with a club after the plaintiff—who was suffering a seizure—had been subdued. By the end of the encounter, the plaintiff had abrasions and bruises all over his face and scalp, as well as two cuts on his forehead requiring twenty stitches. *Id.* at 883. The plaintiff's back and chest were also covered in abrasions and bruises, including one on his back in the shape of a boot. *Id.* In *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 728, the decedent was holding a baseball bat when the defendant-officer deployed a taser. The decedent went into convulsions and exclaimed, "I give up. I give up. Stop. Stop. I give up." *Id.* The defendant-officer deployed his taser again, causing the decedent to drop the bat. *Id.* After a third use of the taser, the decedent fell. *Id.* Three officers sat on the decedent's back, while one defendant-officer applied six more taser shocks, resulting in death. *Id.* at 728–29. And so on.

Rather than provide notice that Melloh's conduct violated a clearly established right, the cases cited by Gupta highlight, by contrast, Officer Melloh's restraint and professionalism. It is well-settled that the right of a law enforcement officer to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In *Padula v. Leimbach*, 656 F.3d 595, 597–98 (7th Cir. 2011), the plaintiff—who suffered a hypoglycemic episode while driving—did not comply with the defendant-officers' commands to exit the vehicle. The defendant-officers physically removed him, maced him

7

several times, struck him with a baton, and kept him in a prone position until paramedics arrived. *Id.* The plaintiff died in the hospital two weeks later. *Id.* at 600. The Seventh Circuit affirmed summary judgment for the defendant-officers, specifically holding that the defendant-officers were entitled to remove the plaintiff from his car when he did not comply, and that dropping the plaintiff to the ground as dead weight—as opposed to forcibly throwing him to the ground—was not unreasonable. *Id.* at 603. Similarly, in *Smith v. Ball State Univ.*, 295 F.3d 763, 765 (7th Cir. 2002), the plaintiff entered diabetic shock while driving. The defendant-officers forcibly removed him from the car. Another defendant-officer, believing that the officers and the plaintiff were engaged in a struggle, attempted to apply a knee strike but instead tackled both the officers and the plaintiff. *Id.* at 766. The defendant-officers then held the plaintiff's face to the ground while they handcuffed him. *Id.* at 767. The Circuit held that, when the plaintiff failed to comply with orders to exit his car, the defendant-officers were justified in using force to remove him, and the force used was reasonable. *Id.* at 770–71.

Melloh's use of minimal (or, at most, near-minimal) force to coerce Gupta to leave the hotel in this instance "may have been clumsy or imprudent," but it did not violate a clearly established right. *Brant v. Volkert*, 72 F. App'x 463, 466 (7th Cir. 2003). And although Gupta suffered serious—and by all accounts accidental—injury, "he cannot show simply by the fact of injury itself that [Melloh's] conduct was unreasonable." *Id.* To the contrary, Seventh Circuit cases indicate that Melloh's conduct was constitutionally reasonable.

Accordingly, Melloh is entitled to qualified immunity, and Gupta's excessive force claim is dismissed. Gupta opposes summary judgment on his state-law battery claim "on the same basis" as his excessive force claim; Defendants are therefore likewise entitled to summary judgment on his state-law battery claim.

Gupta also alleges a claim for unreasonable prosecution, contending that there was no probable cause for the resisting law enforcement charge. (Gupta does not contest the public intoxication charge.) "[T]here is no such thing as a constitutional right not to be prosecuted without probable cause." *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013). Gupta does not offer any evidence of a post-arraignment deprivation of liberty or property due to the resisting law enforcement charge. *See id.* at 594. "Nor can [Gupta] establish a liberty violation based solely on his having to 'defend' . . . against the charges before they were dismissed." *Id.* Melloh is therefore entitled to summary judgment on Gupta's unreasonable prosecution claim.

## Conclusion

For the reasons explained above, Defendants' motion for summary judgment (ECF No. 48) is **GRANTED**, and Gupta's claims are **dismissed** on the merits with prejudice. A final judgment shall be entered separately.

**SO ORDERED.**

Date: 8/9/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Traci Marie Cosby
OFFICE OF CORPORATION COUNSEL
Traci.Cosby@indy.gov

Raeanna C. Spahn
ESKEW LAW LLC
raeanna@eskewlaw.com

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov

Richard A. Waples
WAPLES & HANGER
rwaples@wapleshanger.com